UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19 CR 72 SNLJ (ACL) |
| | ) |
| LOUIS J. ROBERTS, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Pending before the undersigned is the Defendant's Motion to Suppress Evidence.  (Doc. 24.)

Roberts seeks to suppress the evidence secured by law enforcement officers following the execution of a Search Warrant at his home.  He argues that the use of an unwitting person to purchase a controlled substance from a residence was insufficient information for the issuing judge to find probable cause and issue the Search Warrant. Roberts claims that "[i]f the court cannot judge the credibility of the 'unwitting person,' a finding of probable cause cannot be prudently made." *Id*. at 3.  In his post-hearing brief, Roberts further argues that the officer who applied for the Search Warrant failed to include information that may have influenced the issuing judge's probable cause finding.  (Doc. 37 at 4-5.)

The Government responded that there was "sufficient probable cause" to support the issuance of the Search Warrant; and even if it lacked probable cause, the officers acted in "good faith" reliance on its validity.  (Docs. 28, 38.)

In consideration of the pleadings identified above and the evidence offered by the parties, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Defendant's Motion to Suppress Evidence be denied.

## I.  Findings of Fact

Roberts accepted and adopted (Doc. 37 at 1) the Government's description of the "Factual Background" in its Response to his Motion (Doc. 28 at 1-4).   Roberts' primary contention is that the information in the Affidavit was insufficient for a probable cause finding.  As such, the facts giving rise to Task Force Officer (TFO) Christopher Newton's request for the reviewing judge to find probable cause for the issuance of a search warrant are set out here.  TFO Newton stated:

> I was contacted by a Missouri State Highway Patrol Confidential Informant (CI), who has proven reliable in the past.  This CI has previously conducted controlled buys in past drug related offenses and investigations.  The target location for this search warrant is 503 South Frederick in Cape Girardeau.  I have received numerous tips regarding this residence and those tips all related to the distribution of heroin and other controlled substances from the target residence.  This reliable CI advised they could utilize an unwitting person to purchase heroin from the target premises of 503 South Frederick.  An "unwitting person" is a subject who is unaware they are being utilized to perform a drug purchase on behalf of law enforcement.
>
> CI advised they would meet with the unwitting person near 503 South Frederick.  The CI advised they would provide the unwitting person with a quantity of US Currency and the person would proceed to 503 South Frederick, obtain the heroin and bring it back to the CI.  The CI advised

they have conducted a drug transaction utilizing this unwitting person in the past in this same manner.  CI advised me of the identity of the unwitting person and I was familiar with this individual and therefore knew who would be serving in that capacity.

Within the last 72 hours, I met with the CI at a predetermined location and their person was searched with negative results.  I then drove CI to the area where they would meet the unwitting person and dropped CI off.  A short time later, I observed the unwitting person leave the meeting location.  At that time, I received a phone call from the CI, who advised me they had provided the unwitting person with an amount of US Currency and the unwitting person was walking to 503 South Frederick to obtain the heroin.

I continued to maintain surveillance on the unwitting person and observed him/her walk to 503 South Frederick and enter the front door of the residence.  Approximately five (5) minutes later, I observed the unwitting person exit the front door of 503 South Frederick and proceed directly back to the meeting location with the CI.  The unwitting person did not make contact with any other subjects or enter any other residence while walking to and from 503 South Frederick.  A short time later the CI left the meeting location where CI had met with the unwitting person and walked back to my location.  The CI then provided me with a baggie containing a single rocklike substance which field tested positive for the presence of heroin.

Based on my training and experience, as well as my familiarity with this reliable CI, I believe probable cause exists to believe that the heroin turned over to me by CI was purchased from the target premises by the unwitting person.

*See* Gov't. Ex. #1 at 5-6.

## II.  Conclusions of Law

Roberts bemoans the fact that the Search Warrant in this case was not typical in that it targeted a *location* rather than a *person* at a specified location and the underlying investigation was not in accord with the typical controlled purchase since an unwitting

person was used to conduct the actual buy.  Roberts claims that the issuing judge had no way to gauge the reliability of the unwitting person or why the CI believed that person could purchase drugs from the target location thereby negating the probable cause finding.  (Doc. 37 at 5-6.)

The Government responded that whether TFO Newton followed the "typical" course in conducting this drug investigation is unavailing as:

> The sole task of a judge reviewing a search warrant application is simply to make a common-sense assessment of whether the facts set forth in the affidavit, viewed in light of the totality of the circumstances, are sufficient to establish a "fair probability" that evidence of criminal activity will be found in the place to be searched.

(Doc. 38 at 7.)  As discussed below, applying these principles results in a finding that there was probable cause to support the issuance of the Search Warrant in this matter.

### II.A.   Probable Cause

Probable cause to issue a warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Whether probable cause has been established involves a practical common-sense evaluation of the totality of the circumstances.  *Id.*

The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States*, 338 U.S. 160, 175 (1979).

The Supreme Court has repeatedly noted that probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Rather, probable cause is a "fluid concept turning on the assessment of probabilities in particular factual contexts--not readily or even usefully reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232. Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id*. All that need be shown for probable cause to search is that there is "a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018) (quoting *Gates*, 462 U.S. at 243-44, n. 13. Also, affidavits should not be read in a hypertechnical manner. *See United States v. Ventresca*, 380 U.S. 102 (1965).

An examination of the information contained in the Affidavit supports that there was sufficient probable cause to believe 503 South Frederick contained evidence related to controlled substance violations. TFO Newton relied upon the following facts:

1. A reliable CI who previously conducted controlled buys in drug related investigations contacted TFO Newton and said they could utilize an unwitting person[1] to purchase heroin from 503 South Frederick in Cape Girardeau.

2. TFO Newton had received numerous tips from individuals who reported a belief that heroin and other controlled substances were being distributed out of 503 South Frederick.

---

[1] TFO Newton defined "unwitting person" as "a subject who is unaware they are being utilized to perform a drug purchase on behalf of law enforcement."

3. The CI shared that in the past, the CI had met with the unwitting person, given the unwitting person money, the unwitting person purchased a controlled substance, and then met with the CI to give the controlled substance to the CI.

4. The CI indicated that the unwitting person could purchase heroin from 503 South Frederick in the manner described in paragraph three.

5. TFO Newton was familiar with the person who the CI identified as a potential unwitting informant.

6. Within three days prior to applying for the Search Warrant, TFO Newton met with the CI for the controlled purchase of heroin from 503 South Frederick through use of the unwitting person.  TFO Newton searched the CI and the CI was not in possession of drugs.

7. TFO Newton conducted surveillance of the CI as the CI travelled to meet the unwitting person before and after the controlled purchase.  He also conducted surveillance of the unwitting person as they travelled to and from 503 South Frederick during which time the unwitting person did not interact with anyone else.

8. TFO Newton noted the unwitting person was inside 503 South Frederick for approximately five minutes.

9. When the CI returned to TFO Newton's location, the CI provided Newton with a baggie containing a substance that tested positive for the presence of heroin.

After considering these nine factors along with his training, experience, and familiarity with the reliable CI, TFO Newton concluded he had probable cause to believe the heroin the CI gave him had been purchased at 503 South Frederick by the unwitting person. This was a practical and common-sense conclusion reached by an officer who had been working in the field of law enforcement for eight years.

Given the above, the undersigned concludes that there was at least a "fair probability" that items relating to the distribution of heroin would be found within 503 South Frederick.

**II.B.  Reliability of Informant**

Relying on the Tenth Circuit, Roberts urges that corroborative efforts by law enforcement are necessary to reduce the probability of a lying or inaccurate informer. *See* Doc. 37 at 8, citing *United States v. Artez*, 389 F.3d 1106, 1115 (10th Cir. 2004).

When an "affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005), citing *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996).  The credibility and reliability of an informant are not "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230.  As the Supreme Court elucidated, "[i]nstead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id*. at 233 (citations omitted).  *See also United States v. Harris*, 403 U.S. 573, 584-85 (1971) (The reliability that comes from knowing an informant's identity is not based on inclusion of their name in the affidavit, but rather on the fact that if he/she is lying he/she may be prosecuted under state laws for making a false statement to police.)

"The reliability of a confidential informant can be established if the person has a history of providing law enforcement officials with truthful information." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). Absent indicia of an informant's reliability, courts insist that search warrant affidavits contain substantial police corroboration, which "may be established by a police-monitored controlled buy…." *United States v. Hawkins*, 278 Fed.Appx. 629, 635 (8th Cir. 2008). *See also United States v. Neal*, 528 F.3d 1069, 1073-74 (8th Cir. 2008) (proven reliability of informant was supported by a single controlled buy from defendant and description of firearms informant observed in defendant's residence). A controlled buy is just one example of how the police might adequately corroborate an informant's reliability.

Furthermore, it is well established that:

> [a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct.

*United States v. Harris*, 403 U.S. 573, 583-84 (1971); *see also United States v. Pennington*, 287 F.3d 739, 742 (8th Cir. 2002) (fact that an informant implicated himself in criminal activity to the police supports a finding of probable cause to search). An informant's admissions regarding involvement in recent and continued illicit activity has the effect of enhancing the informant's credibility and reliability rather than deflating it.

As noted by the Government, other circuits have concluded that use of an unwitting informant may result in an officer developing probable cause for a search. *See*

Page **8** of **14**

*United States v. Artez*, 389 F.3d 1106 (10th Cir. 2004); *United States v. Washington*, 775 F.3d 405 (D.C. Cir. 2014) (drug purchase by unwitting informant established probable cause even though unwitting informant might have had drugs on him prior to transaction); *United States v. Jordan*, 999 F.2d 11, 12-14 (1st Cir. 1993) (approving use of CI and unwitting informants in controlled purchase, even though affidavit did not "exclude the possibility that [an informant] might have obtained the marijuana at some place along the drug 'buy' route other than [the suspect] residence"); *United States v. Blackwood*, 913 F.2d 139, 141 (4th Cir. 1990) (approving use of confidential informant and unwitting subject); *United States v. Washington*, 380 F.3d 236 (6th Cir. 2004) (reversing district court's suppression order and holding, at the very least, that *Leon* good faith exception applied).  That being said,

> The use of an unwitting informant introduces an additional layer of uncertainty to the transaction because it leaves open the possibility that the narcotics were acquired not at the suspect residence but at the location where the confidential and unwitting informants met before and after the transaction.

*Artez*, 389 F.3d at 1112.

Courts may consider whether information supplied by an informant is corroborated by other information known to law enforcement when examining whether the totality of the circumstances supports a finding of probable cause.  *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

TFO Newton assessed the reliability and accuracy of the information provided by the CI.  In reaching a conclusion there was probable cause to believe someone was dealing drugs out of 503 South Frederick, TFO Newton considered the fact he had

received at least five but not more than ten tips that heroin and other controlled substances were being distributed out of 503 South Frederick. Those tips bolstered the CI's report that an unwitting person could be used to make a controlled purchase of heroin from someone at that location. In addition, the fact the CI's reliability had already been established based on the CI's prior involvement in drug investigations cannot be understated. Furthermore, the CI's desire to cooperate to reduce exposure for pending charges strengthens the incentive the CI had to provide helpful information to law enforcement. Finally, common sense yields an understanding that an unwitting person would not be used to make a purchase if the CI was able to purchase drugs from an occupant of 503 South Frederick. TFO Newton arranged for a controlled purchase to be conducted and he maintained surveillance of the CI and unwitting person. TFO Newton observed that the unwitting person spent only five minutes inside 503 South Frederick before returning to the meeting location and providing heroin to the CI. This information pointed to a conclusion that the unwitting person purchased the heroin from someone inside the target residence.

Roberts further argues that TFO Newton left important facts out of his Affidavit which prohibited the issuing judge from considering them. (Doc. 37 at 4.) First, the CI was not used to conduct the controlled buy because he was not able to make a purchase from the residence at that time. TFO Newton did not know why the CI was unable to do so nor was he aware if the CI had a gripe against someone at the target residence. In addition, the CI was cooperating with law enforcement as he had pending charges that he was hoping to have reduced. Next, when the CI met with the unwitting person before the

purchase was to be made at the target residence, the pair met at the unwitting person's home.  No one searched the unwitting person.  Furthermore, TFO Newton was unaware as to whether the unwitting person had any complaints against the people living at the target residence.  Finally, TFO Newton could not assess the reliability of the five to ten individuals ("tipsters") who reported a belief that drugs were being sold from the residence.  Roberts does not suggest any recklessness on the part of TFO Newton.

      The complaints about things that were unknown to TFO Newton and consequently not relayed to the issuing judge do not remove the probable cause finding.  Some of the questions can be answered with common sense.  For instance, an unwitting person would not be needed if the CI would be able to make a purchase from the target residence.  Suggesting that the unwitting person may have had a gripe or complaint against an occupant of 503 South Frederick is nonsensical as the unwitting person was in a position to enter the residence and purchase heroin.  The unwitting person had no awareness that law enforcement was involved thereby eliminating the potential for an improper motive.  Answering each of the complaints lodged by Roberts would require the undersigned to engage in a hyptertechnical examination of the information contained in TFO Newton's Affidavit.  That is a practice the Supreme Court has instructed reviewing courts to avoid.

      In this case, a reliable CI who was looking to assist law enforcement in order to receive assistance in a pending matter volunteered to participate in a controlled purchase of heroin from 503 South Frederick via an unwitting person.  TFO Newton had received between five and ten tips that drug distribution, including the distribution of heroin, was suspected at 503 South Frederick.  He was also familiar with the unwitting person.  To

corroborate those pieces of information, a controlled purchase with the reliable CI and unwitting person was arranged. Surveillance was conducted and the unwitting person entered and exited 503 South Frederick within approximately five minutes. After that, the unwitting person immediately provided the CI with heroin. It was reasonable for TFO Newton and the judge to conclude that the heroin was obtained from within 503 South Frederick, otherwise there was no need for the unwitting person to go to that location.

In consideration of the foregoing, probable cause existed to search 503 South Frederick and Robert's Motion to Suppress Evidence should be denied.

### II.C.  Good Faith

As a supplement to his argument that the issuing judge's probable cause finding was not supported as a result of his inability to make a credibility finding related to the unwitting person, Roberts claims:

> This missing information is obvious from the face of the warrant, should have been known to the agents involved to the extent that they could not possibly rely upon the warrant in good faith, and to the extent that no reasonable court could adhere to the requirements of the Fourth Amendment and issue a search warrant in this scenario.

(Doc. 24 at 3.) These are conclusory statements unsupported by any factual allegations.

While evidence obtained as a result of a potentially defective search warrant is generally inadmissible, there is an exception for evidence found by officers relying in objective good faith on a defective search warrant. *See United States v. Leon*, 468 U.S.

897, 920, 921 (1984). There are four circumstances under which the *Leon* good faith exception does not apply. They are as follows:

> . . .(1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) " the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient. . .that the executing officers cannot reasonably presume it to be valid."

*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007). *See also Leon*, 468 U.S. 897 at 832.

Based on the above, the undersigned concludes that even if the Search Warrant had been invalid, the good faith exception would apply in this case. First, the issuing judge was not misled by any statements contained in the Affidavit nor did he wholly abandon his judicial role in issuing the Search Warrant. As to whether the Affidavit was so lacking in indicia of probable cause or was so facially deficient that neither the executing officers nor the judge could believe it was valid, the undersigned concluded in the prior section that the information contained in the Affidavit was sufficient to meet the probable cause requirement. Considering the information contained in the entire Affidavit, it was reasonable for both the officer and the judge to believe that the evidence sought at 503 South Frederick would be found. Further, TFO Newton acted reasonably in obtaining the warrant and taking the necessary steps to present the warrant application to the judge.

The undersigned concludes that in the event the Search Warrant was defective, the Search Warrant Application and Affidavit were also sufficient under *Leon* standards.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress Evidence (Doc. 24) be **denied**.

Further, the parties are advised that they have until September 19, 2019, to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of September, 2019.